UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SUNSHINE HEIFERS, LLC,

                  Plaintiff/Counter-Defendant,         Case No. 13-10319

v.                                      Honorable Thomas L. Ludington

MOOHAVEN DAIRY, LLC,

                  Defendant/Counter-Plaintiff,

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND SETTING MOTION FILING DEADLINES

Plaintiff Sunshine Heifers, LLC ("Sunshine"), is in the business of leasing dairy cows. Sunshine began this case against Defendant Moohaven Dairy, LLC ("Moohaven"), a dairy farm. Sunshine's complaint contains a number of counts; the count relevant to the matter at hand is Sunshine's count alleging that Moohaven breached a dairy cow lease agreement ("Lease") with Sunshine. Sunshine sought approximately $465,400.00 in principal damages for the alleged breach of the Lease. Also important to an understanding of the case, however, was Count III of Sunshine's complaint which sought to enforce personal guarantees of the lease made by Defendants Brent, LeeAnn, Elwood, and Joanne Morell, the principals that operated the farm. ECF No. 1 at 10-11.[1]

Sunshine filed its complaint on January 25, 2013. On December 5, 2013, Sunshine filed a motion for partial summary judgment. Sunshine, this Court concluded, met its burden in

_____

[1] At various times the Morell's last name is spelled differently by different parties, persons, and entities involved with this case. All filings made by the Morell's spell the last name consistent with how they were first represented on the docket. That is the spelling that will be used throughout. In lieu of the repetitive use of "[sic]" in the opinion, any quotation where the Morell's name is misspelled (generally as Morrell) is reflective of the spelling used in the quoted document.

establishing that there is no genuine dispute of material fact that the parties' cattle lease agreement was enforceable. Accordingly, the Court granted Sunshine's motion for partial summary judgment on April 16, 2014. ECF No. 58. The immediate question before the Court is to assess Sunshine's request for reimbursement of its legal expenses associated with the instant litigation. Some history of the parties' relationship and the history of this litigation is necessary, however, to understand how the present issue has arrived before this Court.

## I.

### A.

On October 21, 2010, Moohaven initiated a voluntary chapter 11 proceeding. Pl.'s Compl. ¶ 11, ECF No. 1. During the proceeding, Bank of America, one of Moohaven's creditors with a secured claim at the time of plan confirmation of $5,925,326.31, filed a motion to dismiss the chapter 11 proceeding, alleging that "Debtor has used (and most likely spent) approximately $225,000.00 of Bank of America's cash collateral . . . without Bank of America's consent . . . ." Creditor Bank of America's Mot. Dismiss 1, *In re Moohaven Dairy, LLC*, No. 10-24239 (Bankr. E.D. Mich. Dec. 10, 2010), ECF No. 41. After a hearing on Bank of America's motion to dismiss the case, the bankruptcy court denied the motion to dismiss but ordered the appointment of a chapter 11 trustee.  Thomas McDonald was subsequently appointed as trustee on January 12, 2011. Order Directing the Appointment of a Chapter 11 Trustee, *In re Moohaven, LLC*, No. 10-24239 (Bankr. E.D. Mich. Jan. 10, 2011), ECF No. 96. Moohaven then filed a chapter 11 plan on September 30 of that year. Def.'s Resp. Ex. A, ECF No. 50.

The Trustee's First Amended Combined Plan and Disclosure Statement (First Amended Plan)—from the underlying bankruptcy—provides an extensive amount of information about the

parties and the background to this litigation. Section IV of the First Amended Plan described the

Moohaven Dairy operation as follows:

> The Debtor is a Michigan limited liability company that was formed on June 20, 2007. The members of the Debtor include Brent Morrell, Elwood C. Morrell, JoAnne Morrell and Leann Morrell.
>
> The Debtor owns approximately 948.23 acres in Sanilac County, Michigan. The Debtor operates a dairy farm which currently owns and leases approximately 726 cows. Constructed on the farm are several free stall barns. According to the appraisal report prepared for BOA [Bank of America], the dairy facility can handle 1,045 cattle. A sketch of the dairy facility indicating the location of the barns, lagoons and feed bunkers is attached hereto as Exhibit "1", along with a description prepared by the BOA employed appraiser of the structures.  Attached as Exhibit "2" is a copy of a list of equipment prepared by the BOA appraiser.
>
> The Debtor intends to acquire approximately 200 additional head of cattle by virtue of lease agreements, similar to an arrangement that it currently maintains with Parah Leasing and approved by the Court pursuant to the order entered on September 1, 2011 [Docket No.: 267]. A copy of the Trustee's projection supporting this Plan is attached as Exhibit "3".

First Am. Plan 16–17, *In re Moohaven Dairy, LLC*, No. 10-24239 (Bankr. E.D. Mich. Sept. 30,

2011).  Subsection C of Section IV of the First Amended Plan described the primary causes of

Moohaven's need for bankruptcy attention:

> There were a number of factors that contributed to the bankruptcy of the Debtor. The Debtor acquired essentially a new herd of cattle, which suffered a high cull and death rate as a result of sickness, which dramatically impacted its cash flow position as a result of diminished milk production. The Debtor also, along with other dairy farms across the country, survived one of the most significant economic downturns in the milking industry when milk prices plummeted. Further contributing to this problem, was the fact that the Debtor had always contemplated that its herd size would be approximately 900 cattle and when it obtained its financing from the predecessor in interest to BOA it never was able to purchase and achieve a herd size of 900 cattle. Ultimately, all the projections that were put forward for the Debtor and the financial models put together for the Debtor failed because the Debtor did not achieve the 900 level in herd size.

*Id*. at 19–20.

In addition, the First Amended Plan explained some of the actions taken by the parties during the course of the bankruptcy proceeding:

> Since the Petition Date, and in some degree before it, the Debtor (and the Trustee post-petition) have worked to enhance the Debtor's operation and find a way to restructure the indebtedness and enable the Debtor to obtain the additional cattle that the Debtor believes is necessary to operate the farming operation at a profitable level while paying its creditors 100 cents on the dollar. This has been accomplished in large part due to the fact that the herd has stabilized through managed culling of the cattle, sale of calves and the purchase and lease of additional cattle.

*Id*. at 21.

Under the First Amended Plan, the following classes of creditors were unimpaired: Administrative Claims (Class 1); Secured Claim Kubota (Class 6); Secured Claim of PH Financial Services, Inc. (Class 7); and Secured Claim of Don Martin & Sons, Inc. (Class 8). On the other hand, the following classes of creditors were impaired under the Plan: Secured Claims of Bank of America (Class 2); Secured Claim of the IRS (Class 3); Secured Claim of the Sanilac County Treasurer (Class 4); Secured Claim of the USDA (Claim 5); Priority Claim of the IRS (Class 9); and General Unsecured Claims (Class 10). At the time the First Amended Plan was confirmed, Mr. McDonald's administrative claim was for $384,840.59. ECF No. 50, Ex. E at 5.[2]

---

[2] During Mr. McDonald's deposition he explained that he looked to the debtors' post-confirmation income for payment:

> Q: And did you have an understanding or expectation as to when you would be compensated for those services?

> A: Mr. Mack did not make any representations to me. I took it upon myself to see that all creditors or other parties were satisfied or taken care of first before I sought a fee. It was a decision I made.

> Q: And the reason why I am raising those questions is simply because it struck me as odd that the plan was confirmed —

> A: Uh-hmm.

Pursuant to Section VII of the First Amended Plan—entitled Execution and Implementation of Plan—the parties provided that the Bankruptcy Court would retain jurisdiction to address all matters arising out of or related to the Plan. *See id.*, Ex. B at 33–34 ("the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code").

**B.**

On January 25, 2012, Sunshine and Moohaven entered into a cow leasing agreement (the "Lease" or "leasing agreement"), which Moohaven signed but Sunshine did not sign. ECF No. 47, Ex. A at 4. The Lease provided that Sunshine would lease 240 cows to Moohaven for $13,056 per month for 48 months. *Id.* at 1. Moohaven could not cancel or terminate the Lease. *Id.*, Ex. A at ¶4. Sunshine retained ownership of both the cows and any offspring of the cows. *Id.* ¶13. Upon expiration or default of the Lease, Moohaven agreed to return the cows to Sunshine. *Id.* ¶14. Moohaven agreed to maintain the herd at 240 cows at all times. *Id.*, Ex. A (Ex. B). Moohaven also guaranteed that at the end of the Lease, each cow would have a Guaranteed Residual Value of at least $240. Id., Ex. A (Ex. F-1). The Lease also contained an Arizona

---

Q: — and that the post-confirmation debtor, as reorganized, proceeded without an allocation or payment of the Chapter 11 trustee's fees; and that struck me as odd; and I am looking for an explanation as to why that was the case.

A: That was a decision I made. I put the interests of the successful operation of this enterprise first, the payment of creditors, the payment of operating expenses; and I sought that all those expenses were satisfied, taken care of first before I sought any compensation.

Q: Did anyone ask you to do that? Was that a requirement or demand of BofA for them to support the reorganization plan?

A: No. I had the confidence that the plan was going to be successful; and when the time was appropriate, I would seek compensation then.

*Id.*, Ex. E at 20-21.

choice of law provision. *Id*., Ex. A at ¶5. It also contained a merger clause making the Lease the entire agreement between Sunshine and Moohaven and prohibiting any oral modifications. *Id*. ¶24. The lease was concluded with review by McDonald. It was signed by Brent Morell. At the time the Lease was signed, Moohaven had approximately 550 dairy cows in addition to the 240 cows leased from Sunshine. ECF No. 1 at ¶17.

Trustee McDonald made the initial contact with Sunshine and was involved in the assessment of Sunshine's proposed lease agreement and that of another cattle leasing company. ECF No. 47, Ex. A at 25-26. The payments due under the lease were guaranteed by the four Morell principals and also by a security agreement granting Sunshine a security interest in "all cows, heifers, offspring or replacements" in Exhibit "A" to the security agreement or branded with the "SSH brand" and including the milk they produced. ECF No. 1 at ¶16.

Two days later, on January 27, 2012, the bankruptcy court confirmed Moohaven's chapter 11 plan. ECF No. 50, Ex. B.

Pursuant to the Lease, Sunshine began delivering the cows to Moohaven in February 2012. ECF No. 50, Ex. E at 78. Moohaven made regular payments for a number of months. ECF No. 47, Ex. F.

At some point after delivery of the cows, Brent Morell, the principal operator of Moohaven, was seriously injured in a farm accident, and Moohaven was forced to cease operation of the dairy farm. ECF No. 47 at 2.

In November 2012, Moohaven informed Sunshine that it would be unable to make the monthly payments and would be in breach of the Lease. ECF No. 1 at ¶24. In December, Moohaven did just that. *Id*. ¶25. That same month, Sunshine retrieved some 211 of the cows from Moohaven's farm. *Id*. ¶26. On December 13, 2012, 367 of the remaining cows were

- 6 -

auctioned for $340,820.74 and a joint check was issued to Moohaven (Mr. McDonald as trustee) and Sunshine. At some point not specifically documented by the parties papers, further assets were liquidated and the escrow fund maintained by the law firm of Labert, Leser, attorneys for trustee McDonald and Defendant Moohaven, grew to $539,624.18. Ex parte Motion to Reopen Case (copied to this court dated August 22, 2014 in bankruptcy case No. 10-24239).

## C.

On May 14, 2014, two orders were entered pursuant to stipulations furnished by the parties. First, Sunshine voluntarily dismissed the Morells, the parties to the Continuing (Personal) Guarantees. ECF No. 71. Second, Sunshine dismissed its claims against Trustee McDonald. ECF No. 72. The terms of the parties' settlements were not included with any of the documents filed with the Court.

## D.

Then, on August 28, 2014, the Court received a Stipulation to Release Funds from Escrow and Dispose of Certain Trial Issues and Preserve Certain Issues. ECF No. 84. The stipulation provided in relevant part as follows:

> NOW COMES Moohaven Dairy, LLC by and through its attorneys Lambert Leser, and Sunshine Heifers, LLC, by and through its attorneys, Keller & Almassian, PLC, and hereby submit the following stipulation to the Court.
>
> 1. The parties have conferred and agreed to limit the issues to be determined by this Court and to allow disbursement of certain escrow funds as provided in this stipulation.
>
> 2. The parties have agreed that Sunshine is entitled to attorney fees pursuant to the contract. The reasonableness of the amount of allowable attorney fees shall be preserved and shall be heard and determined by the Court.
>
> 3. The issue of the determination of the appropriateness of the interest rate asserted by Sunshine, the acceleration asserted by Sunshine including, but not limited to, the amount of the interest rate, the application of interest, the timing of the acceleration of the indebtedness, whether or not the acceleration is permitted under Arizona law, whether the acceleration and application of interest constitute

liquidated damages or are penalties under the laws of Arizona and the permissibility, reasonableness or enforceability are hereby preserved for further determination by the Court.

4. Neither party shall appeal the decision of this Court with regard to its determination regarding the remainder of the issues or take any action to challenge, repudiate, expand or alter the issues or the determination by the Honorable Thomas L. Ludington.

5. On or before Friday, August 29, 2014 at 12:00 p.m., Eastern Standard Time, the following funds shall be disbursed to the following individuals from the escrow account held at Lambert Leser:

    A. $245,000 to Sunshine

    B. $155,000 to Thomas McDonald, Jr.

6. The remainder of the funds held in the escrow account, after disbursement of the $400,000 referenced above, shall be $139,624.18 (the "Remaining Escrow"). The Remaining Escrow shall be continued to be held by Lambert Leser, in escrow, until further Order of this Court. The Remaining Escrow shall be distributed first to Sunshine for the amount, if any awarded to Sunshine, and the remainder to Moohaven and Thomas McDonald, Jr.

7. The Remaining Escrow funds shall be the exclusive remedy and source of payment of Sunshine, Moohaven and Thomas McDonald, Jr. for any future awards entered by this Court with regard to the issues preserved by the Court and shall be used for no other purpose. The parties agree that any unpaid U.S Trustee Quarterly Fees are the exclusive responsibility of Moohaven.

8. All other counts to the Complaint and counterclaim, defenses as they relate to the other counts to the Complaint and counterclaim, or other issues in this case, except for the defenses and issues preserved herein are hereby dismissed and shall not be heard by the Court.

9. Sunshine shall file and serve its brief on the reasonableness of the amount of its attorney fees on or before September 12, 2014. Moohaven shall file and serve its response to Sunshine's brief on or before September 26, 2014.

*Id*.

Accordingly, on September 12, 2014, Sunshine filed its motion to approve the reasonableness of Plaintiff's attorney fees and for release of the remaining escrow funds to Sunshine. ECF No. 85. Sunshine seeks reimbursement of $152,117.35 in fees and expenses.

Moohaven filed a response, ECF No. 88, and a supplemental response, ECF No. 89, Sunshine did not file a reply.

## II.

The starting point in determining the reasonableness of attorney fees is the "lodestar" method. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Under this method, a reasonable rate is calculated by multiplying "the number of hours reasonably expended" by "a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (internal quotation marks omitted). "Next, the resulting sum should be adjusted to reflect the result obtained." *Id.* (internal quotation marks omitted). Adjustments may be made "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Sixth Circuit has incorporated the twelve factors set forth by the Fifth Circuit in listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as a starting point for determining if adjusting the lodestar figure is warranted. *Adcock-Ladd*, 227 F.3d at 349.[3] "Accordingly, modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349-50 (6th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). A district court awarding fees "must provide a clear and concise explanation of its reasons for the fee award." *Wayne*, 36 F.3d at 533 (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).

---

[3] "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Reed v. Rhodes*, 179 F.3d 453, 471–72 n. 3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19).

### III.

Moohaven does not dispute Sunshine's entitlement to reimbursement for legal fees. It does contest the amount claimed. Sunshine argues that it should receive the full amount being held in escrow since its attorney fees are in excess of that figure. As noted previously, Sunshine calculates that it has incurred fees and expenses of $152,117.35 related to this matter. Moohaven believes that figure should be adjusted downward—to nothing.

In attorneys' fee cases, the party seeking compensation for fees and costs incurred bears the burden of documenting the work performed in the matter. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). In this matter, Sunshine has submitted extensive documentation in order to detail fees billed by their attorneys in this case. See ECF No. 86, Exs. 1-5. Defendant Moohaven objects to these bills, however, and makes six different objections to the total computed by Sunshine. After calculating these reductions, Defendant arrives at a net total attorney fee award of $25,334.75. Defendant Moohaven then makes three equitable objections which it believes counsel against disbursing the $25,334.75, which it believes to be reasonable, to Sunshine. Moohaven's objections will be taken up in two different groups. First, their computation objections will be addressed, and then their equitable objections will be considered.

### A.

Moohaven objects to the calculation of attorney fees by Sunshine in six different respects. These objections are as follows: (1) Sunshine billed unrelated matters in its Moohaven invoices; (2) Sunshine improperly billed for the time it spent calculating its fees; (3) Sunshine engaged in behavior that rendered litigation after May 2014 unnecessary and so fees should not be awarded after that date; (4) Sunshine over-billed when it had multiple attorneys perform the same task; (5) Sunshine did not engage in mediation in good faith on August 30, 2013 and so should not be

awarded fees related to the mediation; (6) Sunshine billed unreasonable amounts for certain litigation related activities.

**1.**

Moohaven's first objection to Sunshine's calculation is that they billed for unrelated matters. Moohaven points to an Eaton Farm Bureau Coop matter and a Minnesota bankruptcy matter. Moohaven objects not only to time entries specifically designated under those headings but seemingly ambiguous, related entries. Sunshine, however, explains in a footnote to their motion, that those matters are indeed unrelated and have been subtracted from the total attorney fees they claim. According to Sunshine the amount subtracted is $3,927.50. ECF No. 86 at 2 n.1. Moohaven alleges that the actual amount of unrelated entries and seemingly related but ambiguous entries is $12,820. ECF No. 88 at 1.

As previously noted, the burden of properly documenting fees and costs related to a matter lies with the party seeking compensation. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). The billing records submitted must "describe the work performed in sufficient detail to establish that the work is reasonably related to [Sunshine's case against Moohaven]." *In re Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999). Where the detail in the billing records is insufficient the Court has discretion to reduce the award accordingly. *See Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting Hensley, 461 U.S. at 433). Here, it is undisputed that unrelated matters were collected under the Moohaven billing number. Moohaven has documented both the unrelated entries and ambiguous entries it believes are reasonably related to the unrelated entries. While closer inquiry corroborates Moohaven's allegations that there are ambiguous entries beyond those related to the Eaton Farm Bureau matter that cannot be properly

- 11 -

attributed to the Moohaven matter, it is not an appropriate use of judicial resources to parse Sunshine's invoices.

In lieu of closely scrutinizing billing records and identifying specific hours to be eliminated, courts are permitted to simply reduce the award amount to account for any billing discrepancies. *See Helfman v. GE Grp. Life Assur. Co.*, No. 06-13528, 2011 WL 1464678, at *1 (E.D. Mich. Apr. 18, 2011) (discussing across-the-board reductions in the context of a party only achieving limited success). Rather than performing an itemized deduction as Defendant chose to, or assigning a percentage to this single discrepancy, all justifications for a reduction will be considered before any reduction is assigned.

## 2.

Second, Moohaven contends that Sunshine improperly included time invested in the billing calculations. Moohaven does not explain why this practice is offensive or furnish any legal authority for the proposition. In fact, billing for fee-related litigation is expressly permitted by Sixth Circuit case law. *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 620 (6th Cir. 2007) (applying the holding of *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir.1986), that "time spent in preparing, presenting, and trying attorney fee applications is compensable" in the Title VII context to all attorney fee disputes). As such, Moohaven's objection is without merit and Sunshine's fee does not warrant a reduction on this point.

## 3.

Moohaven's third objection is that Sunshine acted in a manner that unreasonably prolonged litigation when it withheld from Moohaven the fact that it was able to release some of the cattle it had leased to Moohaven. Moohaven alleges that the release would have served to mitigate the damages owed to Sunshine under the lease agreement and that if Moohaven had

known that this mitigating behavior had occurred, they would have more easily reached a resolution in the matter. Moohaven claims they were made aware of the lease of the 180 former Moohaven cows to Swift Dairy on August 25, 2014 but that the lease was entered into with Swift as early as May 2014. According to Moohaven, Sunshine had numerous opportunities to disclose this information prior to August 25, 2014 and if Moohaven was "made aware of the $308,700 lease buyout Plaintiff received from Swift Dairy [prior to August 25, 2014] proceedings would have likely concluded with an expedited resolution ending litigation." ECF No. 88 at 5.[4]

Speculating on the facts of this point is difficult, if not impossible for the Court. A stipulation was entered on the docket on August 28, 2014 that significantly narrowed the issues in the case and led to the parties submitting supplemental briefing on unresolved issues, like attorney fees, rather than going to trial. ECF No. 84. But this does not conclusively establish that Sunshine's costs and efforts after May 2014 are superfluous and should be discounted. Sunshine's alleged failure to timely disclose the lease in aid of resolution will not factor into a downward departure from their reasonable attorney fees.

**4.**

Fourth, Moohaven contends that Sunshine engaged in unreasonable multiple billing. It alleges that Sunshine "has listed 73 time entries; representing 192.2 hours in the amount of $48,240.00; for double, triple, and quadruple billing among attorneys in the same firm for certain time entries or functions[.]" ECF No. 88 at 5. Moohaven contends that these tasks could have reasonably been completed by a single attorney, considering the experience of Sunshine's counsel. *Id*. Moohaven alleges that this practice resulted in 192.2 hours of billing, half of which was unreasonable. *Id*. at Ex. C.

---

[4] Sunshine did not file a reply brief in support of their Motion for Attorney Fees and thus did not respond to this claim.

Moohaven is correct that some entries appear duplicative. Yet none of the entries appear abusive or unreasonable because there is evidence that not all 192.2 hours were spent performing tasks that were billed in multiple entries. It is not unreasonable to expect attorneys working together on a case to consult as to the progress of that matter, especially where, as here, attorneys with varying specialties were needed to consult on various aspects of the case. What is cause for greater concern, however, is the practice of block-billing on some time entries. The large blocks of time Moohaven cites often related to different tasks that were not billed in multiple entries but rather separate, discrete entries. The practice of block-billing prevents accurately determining how much time was spent in attorney-attorney consultation or on tasks billed multiple times. Block-billing falls below the standard of "sufficient detail" required to avoid a reduction of award. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (explaining how a reduction for block-billing is reasonable because it "makes it more difficult to determine how much time was spent on particular activities"). Block-billing is not per se objectionable, depending on the engagement with the client, but since, in this case, it stands in the way of determining how many of those 192.2 hours may have been spent on tasks billed multiple times, a reduction of Plaintiff's award is warranted.

**5.**

Moohaven's fifth objection is that Sunshine failed to participate in mediation in good faith. This failure, Moohaven claims**,** rendered the mediation useless. As a result, Sunshine should not pass on its client costs for the mediation to Moohaven. Absent any evidence of Sunshine's bad faith, which has never been explained or proven, the amounts expended on mediation will not be subtracted in their entirety. This claim will not weigh against Sunshine's award of fees.

- 14 -

**6.**

Lastly, Moohaven claims that Sunshine unreasonably overbilled for a number of tasks related to the litigation. Moohaven cites, for instance, seven different instances where two attorneys reviewed the complaint. This amounted to 3.1 hours for a total of $852.50. But the review of documents and filings germane to the case is not unreasonable if done by multiple attorneys where those attorneys are both involved for good reason and Moohaven offers no suggestion to the contrary. Thus, the instances where there are entries by multiple attorneys will not be factored into any reduction of Sunshine's fees.

Moohaven also alleges that Sunshine engaged in unreasonable behavior with respect to other duplicative billings. Specifically, Moohaven finds the time spent by Sunshine preparing what Moohaven alleges was a hand-written one-page damage calculation and a motion for summary judgment to be excessive. By Moohaven's calculation, Sunshine was billed for 50.6 hours of work dedicated to the production of Sunshine's damage calculation. This number, if spent in its entirety on the damage calculation, would be excessive. But there is evidence in the record that it was not all dedicated to that task.

A number of the entries Moohaven cites involve tasks other than preparing Sunshine's damage calculation. This observation detracts from Moohaven's claim that excessive time was spent on Sunshine's damage calculation. Yet again, however, these time entries are block-billed and block-billing, as noted *supra* § III.A.4, does not meet the "sufficient detail" standard for an award of attorney fees. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Block-billing makes it impossible to determine how many of those 50.6 hours were actually invested in preparing the damage calculation. For this reason, a reduction of Plaintiff's award is warranted.

The same reasoning cannot be applied to the time Sunshine invested completing its papers in support of its motion for summary judgment. Moohaven finds the 26.9 hours Sunshine spent on its papers unreasonable but an examination of the record does not support this claim. Two of the entries on which Moohaven relies (and two others they omit) were in preparation of Sunshine's reply brief to Moohaven's response. Sunshine was billed for a total of 9.8 hours related to the preparation of its reply brief. Adding together the remaining entries Moohaven cites, along with one they omit, it appears Sunshine was billed for 20 hours of work related to their motion for partial summary judgment. These times are not unreasonable, particularly in light of the attorney fee rates and the fact that Sunshine prevailed on the motion. These entries do not warrant a reduction.

Moohaven next alleges that Sunshine was excessively billed for time spent driving to court hearings and conferences. ECF No. 88 at 8. The record does reflect that Sunshine was billed at its attorneys' full hourly rates during transport. The Sixth Circuit has held that a court may apply a "relevant community" fee to an attorney's representation where "a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit[.]" *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). This principle is appropriately applied to transportation costs when billed at a full hourly rate by an attorney travelling from outside the court's territorial jurisdiction. *See Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (finding no abuse of discretion where the district court compensated an attorney at a reduced rate for driving time). The billing of driving time at a full hourly rate favors some modest reduction.

Next, Moohaven claims that Sunshine was unreasonably billed for "IMPROPER LEGAL PROCEEDINGS: Wrong Venue." ECF No. 88 at 7-8. Nothing appears unreasonable about the amount of time billed by Sunshine for what Moohaven alleges are improper legal proceedings.

The time entries in question are two (2) hours of research done by Plaintiff's counsel early in 2013 regarding the proper venue for this litigation. One of the entries predates the filing of the complaint and the other two follow shortly after the complaint was filed. Sunshine does extensive business in Arizona and the lease between Sunshine and Moohaven contained an Arizona choice-of-law clause. This could have led to speculation by the Plaintiff that the District of Arizona was a more appropriate forum for this case. Considering, early on in litigation, that another venue was possibly more appropriate is not unreasonable. Similarly, time billed for voluntarily dismissing a defendant-party early in the litigation is also not unreasonable. All but .1 hour that Moohaven alleges was related to the voluntary dismissal was billed prior to the party being dismissed. These entries do not warrant a reduction.

Moohaven further claims that Sunshine was unreasonably billed for time spent answering interrogatories and discovery requests when those answers were either incomplete or insufficient. Similar to Moohaven's claim with respect to Sunshine's claimed fees for mediation, there is insufficient evidence to warrant a reduction on this count. Moohaven relies primarily on the Sunshine's answer to an interrogatory that listed Sunshine's purchase price of the leased cattle as $360,000.00, a price Moohaven alleges was later shown to be $345,000.00. But Moohaven was not prejudiced by this error and has not shown it to be any more than an innocent error. Moreover, Moohaven does not explain why the $15,000.00 difference between Sunshine's claimed purchase price and actual purchase was material to the litigation.

Lastly, Moohaven asserts that Sunshine was improperly billed with respect to two attorney conferences. First, they claim two attorneys were not necessary at the June 9, 2014 settlement conference. Second, they allege an "incidental meeting at attorney conference." ECF No. 88 at 8-9. With respect to the June 9, 2014 conference, the presence of a second attorney was

- 17 -

not necessarily warranted. Settlement conferences, while important, do not require the presence of a second partner in order to meet the requirements of the conference, even though it may in fact be of benefit to the client. The settlement conference entry favors a reduction. With respect to the "incidental meeting", Moohaven does not indicate why or how this settlement meeting between attorneys, which is how it is described in Sunshine's invoices, was incidental. The "incidental meeting" entries are not unreasonable and do not favor a reduction.

### B.

In addition to objections to Sunshine's attorney fee calculations, Moohaven registers equitable objections to the sum Sunshine claims. There are three main objections. First, the funds already disbursed to Sunshine from escrow are sufficient compensation for Sunshine's losses. In fact, Moohaven claims, the $245,000 disbursed to Sunshine was in excess of what they deserve: "The amount of $245,000.00 of escrowed funds disbursed to Plaintiff is sufficient compensation for net damages of $88,843 after credit for the May 2014 Swift lease buyout payment[.]" ECF No. 88 at 9-10. Second, Sunshine has allegedly engaged in deceptive practices that warrant a further reduction in attorney fees. Third, "the USDA, Farm Service Agency was inadvertently not paid $21,822.43 on their secured claim pursuant to the Confirmed Chapter 11 Plan." ECF No. 88 at 11. Moohaven claims the agency is "entitled to payment on their claim from the remaining escrowed monies." *Id.*

### 1.

Moohaven's first equitable objection to Sunshine's fee calculation (or the $25,334.75 Moohaven claims Sunshine is properly owed after adjustments) is that Sunshine has already received excessive compensation from the release of $245,000 from escrow on August 28, 2014. ECF No. 88 at 9-10. Moohaven claims that Sunshine was only entitled to "net damages of

$88,843.00 after credit for the May 2014 Swift lease buyout payment." *Id*. But this issue was addressed by the parties' stipulation. *See* ECF No. 84. Any attempt to litigate this issue now, after stipulating to the entry of an order disposing of the issue cannot be entertained by the Court as it has neither the information nor criteria to assess it. Furthermore, Moohaven stipulated that the reasonableness of Sunshine's attorney fees remained unaddressed. Nothing in the stipulation supports the proposition now advanced that Sunshine has already received compensation for their right to reimbursement for attorney fees under the lease. This argument will be disregarded.

**2.**

Next, Moohaven argues that Sunshine engaged in deceptive litigation practices that favor a further reduction of their attorney fee award. ECF No. 88 at 10. This argument is, in essence, identical to arguments made earlier that Sunshine billed for improper discovery practices. Nothing in Moohaven's brief substantiates this argument. The analysis above is equally applicable here and no further reduction is warranted on this point.

**3.**

Lastly, Moohaven claims that $21,822.43 of the amount in escrow should be withheld to satisfy a senior interest in the escrow funds held by the USDA Farm Service Agency in the form of a perfected security interest. ECF No. 88 at 11. Moohaven has provided the Court no evidence of this perfected security interest and the agency is not a party to this action. More importantly, and as noted *supra* § I.A, under the First Amended Plan the Bankruptcy Court retains jurisdiction to address all matters arising out of or related to the plan. ECF No. 50, Ex. B at 33-34. If the USDA Farm Service Agency holds such a security interest, as Moohaven alleges, that issue is more appropriately adjudicated by the Bankruptcy Court.

**C.**

Based on the foregoing, some reduction of Sunshine's claim of $152,117.35 in attorney fees and costs is warranted. Because, as noted above, a meticulous and exacting review of the invoices presented in this case would unnecessarily tax judicial resources, an across-the-board reduction in fees is appropriate. Courts have used "across-the-board-fee reductions" and reduced fee requests by between 10%, *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005), and 30%, *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 521 (S.D.N.Y. 1994). *See also Helfman v. GE Group Life Assur. Co.*, 2011 WL 1464478 (E.D. Mich. Apr. 18, 2011) (20% fee reduction appropriate); *In re Pierce*, 190 F.3d 586, 593 (D.D.C. 1999) (25% fee reduction appropriate). A ten (10) percent fee reduction is warranted here. Moohaven will be ordered to disburse $136,905.16 to Sunshine from the funds remaining in escrow.

Accordingly, in is **ORDERED** that Plaintiff Sunshine Heifers, LLC's Motion for Attorney Fees is **GRANTED** in part.

It is further **ORDERED** that Defendant Moohaven Dairy, LLC disburse $136,905.16 from escrow to Plaintiff Sunshine Heifers, LLC.

It is further **ORDERED** that Plaintiff Sunshine is directed to file a motion suggesting the disposition of the remaining funds on the basis of the issues preserved in the August 28, 2014 stipulation, ECF No. 84 at ¶ 3, on or before **January 16, 2015**. Defendant Moohaven shall file its response to Sunshine's motion on or before **January 30, 2015**.

Dated: December 15, 2014                         s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS